# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1711

_____

Judy A. Libel,

        Appellant,

    v.

Adventure Lands of America, Inc.;
John M. Krantz,

        Appellees.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Southern District of Iowa.
\*
\*
\*

_____

Submitted: November 15, 2006
Filed: April 17, 2007

_____

Before RILEY, HANSEN, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

After being terminated from her employment with Adventure Lands of America, Inc. (Adventure Lands), Judy A. Libel (Libel) filed a lawsuit against Adventure Lands claiming violations under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, the Iowa Civil Rights Act (ICRA), Iowa Code § 216, and the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. Adventure Lands filed a motion for summary judgment, and

the district court[1] granted the motion.  Libel appeals the district court's ruling. Finding no error, we affirm.

## I.    BACKGROUND

Adventure Lands, an Iowa corporation, owns and operates an amusement park, a campground, and a hotel/convention center (Inn).  John Krantz[2] served as Adventure Lands's CEO, and his son, Matthew Krantz, began serving as general manager of the Inn in September 2002.

Libel worked as a sales and catering manager at the Inn from June 1997 until November 2, 2002.  Libel's responsibilities included reserving hotel rooms; booking conventions, weddings, and meetings; and making arrangements for food and beverages for those events.  Shortly after she began working at the Inn, Libel was diagnosed with multiple sclerosis (M.S.).

The uncontroverted testimony of Matthew Krantz indicates Libel often made mistakes at work, including failing to request menus in a timely fashion, selling more rooms than available, failing to follow other procedures, giving rooms away for free, and not charging the correct amount for events.  Matthew Krantz viewed these mistakes as weaknesses, and on November 2, 2002, he terminated Libel.  During the termination meeting, neither Matthew Krantz nor Libel discussed Libel's medical condition nor her insurance benefits.

Wellmark Blue Cross/Blue Shield (Wellmark) is Adventure Lands's health care provider.  Daniel Bohner (Bohner), Adventure Lands's controller, annually renews the

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

[2]John Krantz died on January 7, 2006, but, at all times relevant, served as Adventure Lands's CEO.

corporation's health insurance policy. Denise Williams (Williams), an account manager with Wellmark, testified she delivered the 2003 renewal quote for Adventure Lands's health insurance policy to Bohner's attention at Adventure Lands's corporate office on November 1, 2002. According to the renewal documents, Adventure Lands's premiums were to increase from approximately $10,713 per month in 2002 to $13,799 per month in 2003. Williams testified she discussed Adventure Lands's insurance plan with Bohner, but never with John or Matthew Krantz.

On November 14, 2002, Libel met with Bohner to discuss severance benefits, including vacation pay, Consolidated Omnibus Budget Reconciliation Act (COBRA) benefits, and profit sharing. On the same date, Libel also met with John Krantz. Libel testified John Krantz told her that health insurance premiums increased over $500 per person and he could not afford both of them–meaning Libel and himself.[3] John Krantz, who at the time suffered from cancer, testified he never mentioned insurance premiums when he met with Libel.

Arguing her M.S. was a reason for her termination, Libel filed suit against Adventure Lands claiming disability discrimination under the ADA and ICRA, as well as an ERISA violation.[4] Adventure Lands responded, filing a motion for summary judgment, as well as a request to sanction Libel for her failure to respond to Adventure Lands's statement of undisputed facts in compliance with Local Rule 56.1. Determining Libel failed to comply with Local Rule 56.1, the district court deemed portions of Adventure Lands's statement of undisputed facts admitted by Libel. The district court also granted Adventure Lands's motion for summary judgment. In

---

[3]Throughout her tenure, Libel was eligible to receive health care coverage under a policy held by Adventure Lands. Libel had the option to continue that coverage for up to eighteen months after her termination.

[4]Originally, Libel also alleged age discrimination, but she later dismissed that claim.

granting summary judgment, the district court determined (1) Matthew Krantz alone made the decision to terminate Libel, and (2) Libel established neither a prima facie case of disability discrimination under the ADA or the ICRA, nor a prima facie case of interference with prospective insurance benefits under ERISA. This appeal followed.

## II.   DISCUSSION
### A.   Local Rule 56.1

Libel argues the district court erred in deeming certain facts admitted based on her failure to comply with Local Rule 56.1.  Local Rule 56.1 requires the party opposing summary judgment to file a response to the moving party's statement of material facts, and provides, in pertinent part:

> A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. *The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.*

S.D. Iowa R. 56.1(b) (emphasis added).

In this case, Adventure Lands filed a statement of undisputed facts in support of summary judgment.  In opposition, Libel filed a response to Adventure Lands's statement of undisputed facts, as well as her own statement of undisputed facts. Adventure Lands objected to Libel's response claiming it violated Local Rule 56.1 because several of Libel's responses consisted only of the word "denied" without supporting citations, or short, unsubstantiated phrases as "[d]enied . . . because [statements are] based upon only the testimony of interested witnesses."  In light of Adventure Lands's objection, Libel filed a motion for leave to amend her response.

The district court granted Libel's motion. Adventure Lands then objected to Libel's amended response, arguing Libel again failed to comply with Local Rule 56.1. Adventure Lands also requested the district court deem as admitted each disputed fact unsupported by citations. Libel filed a second motion for leave to amend her response. The district court denied Libel's second motion to amend and granted Adventure Lands's request to sanction Libel for her failure to comply with Local Rule 56.1.

We review for abuse of discretion the district court's application of its local rules. Nw. Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003). "The concision and specificity required by [S.D. Iowa] Local Rule 56.1 seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge." Id. (citing Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994)). "Local Rule 56.1 exists to prevent a district court from engaging in the proverbial search for a needle in the haystack." Id. Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense.

The district court gave Libel ample opportunity to correct the deficiencies in her response to Adventure Lands's statement of undisputed facts. Libel did not take full advantage of this opportunity. Libel contends the facts of this case were clearly before the district court in other documents including her brief and other supporting documents and, thus, her failure to comply with Local Rule 56.1 should be excused. The district court was not obliged to scour the record looking for factual disputes. Therefore, the district court committed no abuse of discretion when it deemed admitted Adventure Lands's statements of undisputed facts where Libel's responses violated Local Rule 56.1.

### B.    Summary Judgment

Libel contends the district court erred in granting Adventure Lands's motion for summary judgment.  We review de novo a grant of summary judgment.  Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir. 2005).  Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Pope, 406 F.3d at 1006.

### 1.    Libel's Termination

In granting Adventure Lands's summary judgment motion, the district court determined Matthew Krantz alone decided to terminate Libel.  The district court rejected Libel's assertion that John Krantz, Matthew's father and CEO of Adventure Lands, made the decision to terminate her, finding Libel's allegation was supported by nothing other than her own conclusory statements.  We agree.  In fact, Libel herself, in her deposition, states Matthew Krantz was the one who terminated her.  Other than Libel's speculation, Libel's only support for her assertion that John Krantz made the decision to terminate her is a portion of John Krantz's testimony, which reads:

Q.  Did [Matthew Krantz] say "I'm thinking of terminating her"?
A.  I'm sure he did.
Q.  What did you say?
A.  That he was in charge, do as he sees fit.
Q.  What was the last part?
A.  "Do as you see fit."
Q.  Did you understand that he was effectively getting your approval?
A.  Yes.
Q.  And you didn't object to terminating Judy?
A.  No.

See Appellant's App'x at 131-131A.

-6-

This testimony indicates Matthew Krantz decided independently to terminate Libel. The testimony evidence does not reflect John Krantz either made the decision or used Matthew as a conduit to terminate Libel. See Dedmon v. Stanley, 315 F.3d 948, 949-50 n.2 (8th Cir. 2003) (holding an employer, under certain circumstances, can be liable where the formal decision maker is not the person who harbored an unlawful motive to terminate the employee). But, even if we could conclude from this colloquy that John Krantz participated in Libel's termination, the exchange does not show John Krantz communicated to Matthew Krantz the view that Adventure Lands could not afford to keep Libel employed because of rising insurance premiums. Nothing in the record links Libel's termination to the statements allegedly made by John Krantz to Libel concerning insurance costs. Again, assuming the record linked Libel's termination to concerns of rising insurance costs, no evidence, direct or circumstantial, links Libel's termination to Libel's M.S. and rising insurance costs. The district court properly determined Matthew Krantz alone made the decision to terminate her.

## 2.     ADA Claim[5]

In ADA cases, a plaintiff may survive a defendant's summary judgment motion in one of two ways, presenting either direct or inferential evidence of discrimination. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (citations and quotations omitted). Direct evidence in this context is not the converse of circumstantial evidence. Id. "Rather, direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Id. (internal quotation omitted).

However, if the plaintiff lacks direct evidence of discrimination, she must avoid summary judgment by creating the requisite inference of unlawful discrimination

---

[5]We analyze disability discrimination claims under ICRA within the same framework as claims brought under the ADA. See Fuller v. Iowa Dep't of Human Servs., 576 N.W.2d 324, 329 (Iowa 1998).

under the McDonnell Douglas[6] framework.  Id.  Under this analysis, the employee bears the burden of establishing a prima facie case of discrimination.  Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044-45 (8th Cir. 2005).  The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions.  Id.  If the employer articulates such a reason, the burden returns to the employee to show the employer's justification is a pretext.  Id.  To establish a prima facie case of discrimination under the ADA, a plaintiff must show she: (1) has an ADA-qualifying disability; (2) is qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) suffered adverse employment action.  Id.

Here, Libel presented no direct evidence of discrimination.  The record does not indicate John Krantz terminated Libel, used Matthew Krantz as a conduit to terminate Libel, or discussed any insurance cost-cutting matters or Libel's M.S. condition with Matthew Krantz.  As a result, Libel failed to establish a specific link between her termination and the alleged statements John Krantz made regarding Libel and the insurance costs.  Consequently, Libel cannot survive Adventure Lands's motion for summary judgment with proof of direct evidence.

Likewise, Libel cannot survive Adventure Lands's summary judgment motion with an inference of unlawful discrimination.  In her appeal brief, Libel does not challenge the district court's finding that Libel failed to prove she has an ADA-qualifying disability.  Nor does Libel challenge the district court's finding that she could not perform the essential functions of her job, with or without a reasonable accommodation.  Consequently, Libel waived any challenge to these findings, and as a result, she cannot survive Adventure Lands's motion for summary judgment under the McDonnell Douglas analysis.

---

[6]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

### 3. ERISA Claim

With respect to her claim of interference with prospective insurance benefits under § 510 of ERISA, 29 U.S.C. § 1140, Libel can establish a prima facie case if she demonstrates a causal connection between the likelihood of future benefits and an adverse employment action. Kinkead v. Sw. Bell Tel. Co., 49 F.3d 454, 457 (8th Cir. 1995).[7]

Here, Libel cannot establish a prima facie ERISA case because no evidentiary link exists between her termination and Adventure Lands's insurance costs. There is no evidence Matthew Krantz knew of Adventure Lands's rising insurance costs or the specifics of Libel's insurance plan.[8] Nor is there any link between the statements John Krantz allegedly made to Libel and Libel's termination by Matthew Krantz. Without this evidence, the court cannot justify a reasonable inference of retaliatory motive. Consequently, Libel cannot survive Adventure Lands's motion for summary judgment.

Even assuming Libel established a prima facie case of discrimination under ERISA, Adventure Lands provided legitimate, nondiscriminatory reasons for Libel's

---

[7]Libel's ERISA claim is based on alleged circumstantial evidence; Libel does not claim the record shows direct evidence of intentional interference with prospective insurance benefits. Therefore, we analyze Libel's ERISA claim under the McDonnell Douglas framework. See Kinkead, 49 F.3d at 456-57.

[8]Libel further contends the district court erred in not finding a causal connection, based on temporal proximity, between her termination and the arrival of Adventure Lands's insurance renewal package the day before she was terminated. However, nothing in the record indicates Matthew Krantz knew about the package or the information therein. Nor is there evidence in the record indicating Bohner (the person to whom the package was delivered) or Williams (the account manager) talked to John or Matthew Krantz about the insurance package and costs. Thus, the court properly found no causal connection between Libel's termination and the insurance renewal package.

termination, namely, failing to request menus on time, selling more rooms than available, failing to follow other procedures, giving rooms away for free, and charging incorrect amounts for events. These nondiscriminatory reasons for terminating Libel would prevent a factfinder from concluding Libel demonstrated Adventure Lands's reasons for terminating her were pretextual. See Eckelkamp v. Beste, 315 F.3d 863, 871 (8th Cir. 2002). Thus, Libel cannot survive Adventure Lands's motion for summary judgment.

## III.    CONCLUSION

Based on the foregoing, we affirm the well-reasoned opinion and judgment of the district court.

_____